## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **BOLAJI OWOLABI,**<br>**BOP Reg. # 70187-019,**<br>    **Movant,** | **CRIMINAL ACTION NO.**<br>**1:16-CR-274-TWT-JSA-1** |
| **v.** | **CIVIL ACTION NO.**<br>**1:18-CV-2999-TWT-JSA** |
| **UNITED STATES,**<br>    **Respondent.** | **MOTION TO VACATE**<br>**28 U.S.C. § 2255** |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate his sentence. (Doc. 88).

**IT IS RECOMMENDED** that the motion be **DENIED.**

## I.    Background

In July 2016, Movant was indicted in this Court on two counts of access device fraud (Counts 1 & 3) and two related counts of aggravated identity theft (Counts 2 & 4) based on events that occurred on June 9 & 23, 2016. (Doc. 14). Movant signed a Guilty Plea and Plea Agreement (Doc. 45-1) and entered a plea of guilty to Counts 1 and 2 only. (Doc. 82 (Plea Hr'g Tr.)). He was sentenced to a one-year term of imprisonment for access device fraud and to a mandatory consecutive two-year term for aggravated identity theft. (Doc. 53; *see* Doc. 83 (Sentencing Hr'g Tr.)).

## II.   <u>Standard of Review</u>

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). But it is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

## III.   <u>Movant's Grounds For Relief: Ineffective Assistance Of Counsel</u>

Movant alleges that he received ineffective assistance of counsel from Donnell Holiday, his defense attorney, who failed to (1) ensure that he understood all the consequences of his guilty plea; (2) subject the prosecution's case to meaningful adversarial testing during the plea phase; and (3) ensure that his appellate rights were preserved. (Doc. 88 at 4-7; *see* Doc. 88-1 (Supp. Mem.) at 7-12).

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion). "An

2

ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*). Second, a federal court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland*[], 466 U.S. [at] 687-88 []. To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014).

### A.    Movant's Plea Not Knowing and Voluntary

Movant first claims that "Donnell Holiday 'coerced' [him] into agreeing to the government's plea offer, for fear of the enormous sentence" he would receive if he lost at trial, but actually because of counsel's "inexperience, incompetence, laziness, etc."—and therefore Movant "did not voluntarily sign the plea agreement." (Doc. 88-1 at 7). Movant also claims that he "did not fully understand or accept the agreement he signed," "despite the questioning by the district judge to ostensibly establish that [he] understood <u>all</u> the terms and conditions of the plea agreement." (*Id.*). He "admitted to what was in his indictment, [but] he did not fully understand or accept all the ramifications of his plea." (*Id.* at 8).

The undisputed evidence before the Court reveals otherwise. At his guilty plea hearing, Movant acknowledged, under oath, the following:

4

1.      he understood the trial rights he was waiving by entering his plea (Doc. 82 at 4-7);

2.      he understood the elements of the crimes to which he was pleading guilty and his maximum sentences—10 years for access device fraud plus a mandatory consecutive 2-year sentence for aggravated identity theft—and that his guideline sentence would not be calculated until his pre-sentence report had been prepared and any issues arising therefrom had been resolved (*id.* at 12-18);

3.      he understood that he would not be able to withdraw his plea after it was entered, even if the sentence he received was greater than he had expected (*id.* at 18-19);

3.      he had received neither any threats to induce his plea nor any promises, other than those in his written plea agreement (*id.* at 9-10, 18-19);

4.      he was satisfied with his counsel's performance (*id.* at 12);

5.      he had received enough time to review the proposed plea agreement with his counsel and to understand its contents (*id.* at 11-12);

6.      he understood the terms of the appeal waiver in his plea agreement and he agreed to them "freely and voluntarily" (*id.* at 18-19); and

7.      he was pleading guilty because he was in fact guilty of the acts alleged in the

indictment, i.e., he had used a credit card that belonged to someone else to buy "something, a gift card at Target" on June 9, 2016—in fact, six gift cards worth $206 each—which transaction satisfied the elements of both of his crimes of conviction (*id.* at 13, 16, 20-22).

> The Court accepted Movant's plea:

> At this time I find that the Defendant understands the charges against him and the consequences of his plea of guilty. I have observed the Defendant during this proceeding, and he does not appear to me to be under the influence of any substance which might affect his judgment or his actions in any manner.

> I find that the offer of the plea of guilty of the Defendant to Counts 1 and 2 of the indictment has a factual basis. It is free of any coercive influence of any kind. It is voluntarily made with full knowledge of the charges against him and the consequences of his plea of guilty.

> I find that the Defendant is competent to understand these proceedings and to enter a knowing plea of guilty. I find that there have been no promises of any kind made to him by anyone except as incorporated in the plea agreement set out in open court. It is hereby ordered that the plea of guilty of the Defendant to Counts 1 and 2 of the indictment is accepted and entered.

(*Id.* at 22-23).

"A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." *United States v. Speight*, 454 Fed. Appx. 785, 787 (11th

Cir. 2011). Evidence that an accused entered his guilty plea knowingly and voluntarily includes "[s]olemn declarations in open court," which "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"); *see Connolly*, 568 Fed. Appx. at 771 ("'The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.' " (quoting *Blackledge*, 431 U.S. at 74)).

Movant's sworn declarations during his guilty plea proceedings reveal that his plea was knowing, voluntary and uncoerced; that he was satisfied with his counsel's performance; and that his guilty plea is therefore valid and enforceable. (*See generally* Docs. 45-1, 82); *Speight*, 454 Fed. Appx. at 787. Movant cannot overcome the strong presumption of veracity inherent in his solemn declarations before this Court, *see Blackledge*, 431 U.S. at 74, by presenting, as he has done, nothing more than his unsupported assertion that he was coerced into entering an unknowing and involuntary guilty plea. *See Patel v. United States*, 252 Fed. Appx. 970, 975 (11th Cir. 2007) (rejecting § 2255 appellant's claim—that he was coerced into entering his guilty plea in part by counsel's promise of a more lenient sentence than he

7

received—because appellant's "allegations are in direct conflict with his statements during the plea colloquy, and he has produced no evidence to challenge the veracity of his sworn testimony"). For these reasons, ground one fails.

**B.   Government's Case Not Subjected to Adversarial Testing**

Movant next claims that his defense counsel "failed to subject [the] prosecutor's case, during the plea phase, to meaningful adversarial testing by failing to call a creditable and reliable witness. Further, [counsel], by failing to object, allowed the prosecutor to introduce unreliable and insufficient evidence that was material." (Doc. 88-1 at 9). Movant claims that had he known that the credit cards he used "were fraudulent, he would have never used them," which claim he easily could have proven had counsel issued a subpoena for the "friend," as yet unnamed, who had sent the credit cards to Movant. (*Id.* at 9-10).

> Counsel was also aware that the government went to the houses/places where those credit cards were mailed and no one could identify Petitioner or knew him. The evidence was clear. Nothing prevented [counsel] from moving appropriately and presenting the court with comprehensive arguments to clear Petitioner of aggravated identity theft. By not doing so, counsel rendered ineffective assistance. . . .

> Had government and defense counsel subpoenaed the credible witness, [Movant] would have been cleared of aiding and abetting aggravated identity theft. The only charge would have been the access device charge.

> [Counsel] should have objected or refused the plea agreement on any

8

number of grounds (e.g., lack of foundation, hearsay, no co-conspirator, etc.) and/or prepared for trial.

(*Id.* at 10).

Again, the plea hearing evidence shows otherwise. Movant admitted at that hearing the conduct that supported his convictions, including his knowledge that the credit card he used to purchase six Target gift cards on June 9, 2016 belonged to someone else. Indeed, even now, he admits that by buying those Target gift cards with a credit card that belonged to another person he committed access device fraud, in violation of 18 U.S.C. § 1029(a)(2). (Doc. 88-1 at 11; *see* Doc. 14; Doc. 82 at 12-13). But a violation of § 1029(a)(2) is one of the offenses to which the following passage, defining aggravated identity theft, refers: "Whoever, during and in relation to *any felony violation enumerated in subsection (c)*, knowingly transfers, possesses, or uses, without lawful authority, a means of identification *of another person* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1) (emphasis added); *see id.* § 1028A(c)(4); (*see also* Doc. 14; Doc. 82 at 15); *United States v. Lee*, 16-11007, 2018 U.S. App. LEXIS 19787, at *6 (11th Cir. July 18, 2018) ("[T]o be convicted of aggravated identity theft, [defendant] had to know the [access devices] 'belonged to another person,' *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009),

while access device fraud does not require such knowledge."). Movant acknowledged at his guilty plea hearing that he "used somebody's credit card that [did not belong to him] to purchase [] a gift card at Target." (Doc. 82 at 13). He later acknowledged that the prosecutor's recitation of facts, as follows, is true:

> The evidence . . . would show that on June 9th, 2016, [Movant] went into a Target store in this district and bought six gift cards valued at $206 each[,] for a total of over a thousand dollars[,] using a Chase Visa card in the name of a Kenneth Thompson. That's the K.T. in . . . Counts 1 and 2 of the indictment.
>
> Victim Thompson has been interviewed, and he confirmed that he does not know [Movant] and did not give [him] permission to use his credit card or any of his financial information.

(*Id.* at 21-22).

Movant has offered no evidence to overcome the above solemn declarations under oath in open court that he knew that he had fraudulently used an access device, a credit card, that "belonged to another person." *See Lee*, 2018 U.S. App. LEXIS 19787, at *6. Movant has therefore failed to show that he was prejudiced by counsel's failure to put the government's case of aggravated identity theft to adversarial testing. Based on the record before this Court, there was nothing to test. Ground two fails.

## C.   Movant's Appellate Rights Not Preserved

Finally, Movant claims that counsel failed to preserve his appellate rights after

10

Movant specifically instructed counsel that he "would accept the plea so long as all of his future rights were retained. [Counsel] assured [him] that those rights were preserved in the plea agreement. They were <u>not</u>." (Doc. 88-1 at 12). Movant explains in his Memorandum of Law that this claim of error focuses specifically on the presence of an appeal waiver clause in the plea agreement. (*Id.* at 7-8). Movant states that counsel "did not understand" this plea waiver and never discussed this provision with Movant, and that this provision contradicts Movant's instructions to counsel to "reserve his rights for errors." (*Id*. at 8). The provision at issue states:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction, sentence, and any forfeiture order imposed by the Court, and the right to collaterally attack his conviction, forfeiture order and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court. *Claims that Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver.* The Government will not appeal the Court's criminal forfeiture decision. Defendant understands that this Plea Agreement does not otherwise limit the Government's right to appeal, but if the Government directly appeals the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 45-1 at 15 (emphasis added)).

Yet again, however, Movant's claim expressly contradicts his sworn testimony at the plea hearing. Both the prosecutor and the District Judge separately

11

went over the plea waiver in detail at the plea hearing. (Doc. 82 at 8-9, 18-19).

Movant then clearly acknowledged that (i) he understood that he was waiving his

appellate rights except in limited delineated circumstances, (ii) no one had forced or

threatened him to give up his appeal rights or had offered him any promises outside

of the plea agreement in exchange for the waiver, and (iii) he was giving up his right

to appeal freely and voluntarily. (*Id*. at 18-19). Movant also acknowledged, after the

prosecutor summarized the entire plea agreement including the plea waiver

provision, that Movant had sufficient time to discuss the matter with his lawyer

before entering the agreement, and that he was satisfied with his lawyer's services

in the case. (*Id*. at 11-12). As explained at length above, Movant fails to establish

any basis for the Court to disregard these clear, sworn statements and to instead grant

him relief based on his new conclusory and self-serving allegations.[1]

Moreover, Movant has not demonstrated that he attempted to appeal his

conviction and sentence but was barred from doing so by his appeal waiver. Nor

---

[1] While it is not required that Movant have an advanced degree for the Court to credit his testimony that he understood the provisions of his plea agreement, it bears noting that Movant testified that he has a college degree and a master's degree in microbiology, and that English is his first language. (Doc. 82 at 3-4). All of this testimony was before the District Judge as he made his express findings that the Movant was freely and voluntarily pleading guilty.

does Movant allege that counsel failed to comply with any express instructions to appeal.

**IV.** **Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's 28 U.S.C. § 2255 motion to vacate his sentence (Doc. 88) be **DENIED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 14th day of November, 2018.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

13